UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>XAVIER SURITA, et al.,<br><br>Defendants. | No. 2:25-cr-00026-TLN<br><br>**ORDER** |

This matter is before the Court on Defendant Xavier Surita's ("Defendant") Motion to Revoke the Magistrate Judge's Detention Order. (ECF No. 86.) The Government filed an opposition and supplemental opposition. (ECF Nos. 89, 91.) Defendant did not file a reply. For the reasons set forth below, the Court DENIES Defendant's motion.

///
///
///
///
///
///
///
///

1

## I.     FACTUAL AND PROCEDURAL BACKGROUND

On February 6, 2025, the grand jury returned a fifteen-count Superseding Indictment charging Defendant with distribution of methamphetamine in violation of 21 U.S.C. § 841(a)(1) (Count Ten) and distribution of fentanyl in violation of 21 U.S.C. § 841(a)(1) (Count Eleven).[1] (ECF No. 58.)  On January 29, 2025, at the Initial Appearance, the magistrate judge ordered Defendant detained.  (ECF No. 12.)  On February 11, 2025, at the Arraignment, Defendant entered a plea of not guilty.  (ECF No. 67.)

On March 3, 2025, Defendant filed the instant motion to revoke the magistrate judge's detention order, arguing there is no risk of nonappearance and no present, quantifiable danger posed by Defendant's release.  (*See* ECF No. 86.)  The Government filed oppositions, arguing the nature and circumstances of the offense charged, weight of the evidence, and Defendant's history and characteristics weighs against his release, and Defendant remains a danger to the community and flight risk.  (*See* ECF Nos. 89, 91.)

## II.     STANDARD OF LAW

The district court conducts its own *de novo* review of the magistrate judge's detention order.  *United States v. Koenig*, 912 F.2d 1190, 1191 (9th Cir. 1990).  The district court "should review the evidence before the magistrate and make its own independent determination whether the magistrate's findings are correct, with no deference."  *Id.* at 1193.

Under the Bail Reform Act, courts may detain a defendant prior to trial only where "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community."  18 U.S.C. § 3142(b); *see also United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008).  When the Government seeks pretrial detention, it must establish by a clear preponderance of the evidence that the defendant poses a flight risk, and by clear and convincing evidence that the defendant poses a danger to the community.  *United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985); *see also* 18 U.S.C. § 3142(f).  In determining whether the Government has met its burden, courts consider the

---

[1]     Defendant was not charged in the remaining counts in the Superseding Indictment.

following factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the person; (3) the history and characteristics of the person; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.  18 U.S.C. § 3142(g).

"Doubts regarding the propriety of release should be resolved in favor of the defendant." *Motamedi*, 767 F.2d at 1405; *see also United States v. Townsend*, 897 F.2d 989, 994 (9th Cir. 1990).  Further, a court must release the defendant from pretrial detention under the least restrictive condition or combinations of conditions that will reasonably assure the appearance of the person and safety of the community.  *Motamedi*, 767 F.2d at 1405.

### III.    ANALYSIS

Defendant argues he is not a flight risk and there is no risk of danger to the community posed by his release.  (ECF No. 86 at 3–4.)  The Government argues the 18 U.S.C. § 3142(g) ("§ 3142(g)") factors weigh against Defendant's release, Defendant is a danger to community, and Defendant is a flight risk.  (ECF No. 89 at 4–7; ECF No. 91 at 2.)  The Court will first address the § 3142(g) factors (which includes whether Defendant is a danger to the community) and then whether Defendant is a flight risk.

      A.    <u>Section 3142(g) Factors</u>

            *i.    Nature and Circumstances of the Offense Charged and Weight of the Evidence*

The Government contends Defendant is charged with delivering large amounts of methamphetamine and fentanyl in and around Sacramento, faces a mandatory minimum sentence of 10 years in prison and up to life, and there is a presumption for detention.  (ECF No. 89 at 4.) Specifically, the Government notes Defendant sourced co-defendants and a confidential source ("CS") with methamphetamine and fentanyl over the course of at least four months — law enforcement surveilled Defendant (who was present for multiple controlled purchases) sourcing potent drugs to violent members of the Oak Park Bloods, who in turn sold those drugs to a CS. (*Id.* at 5.)  The Government contends the weight of the evidence is overwhelming.  (*Id.* at 5–6; ECF No. 91 at 2.)  Defendant does not address these factors in his motion.  (ECF No. 86.)

The Court ultimately finds the nature and circumstances of the underlying offenses (distribution of methamphetamine and fentanyl) are fundamentally dangerous and the weight of the evidence is strong. The Court in particular finds persuasive the Government's citation to the following evidence: Defendant's vehicle was present to drop off an additional two pounds of methamphetamine to a CS; another co-defendant was recorded as telling the CS his source of supply (Defendant) would ensure the quality of drugs in the future (demonstrating Defendant was responsible for the preparation and sale of drugs); law enforcement documented a co-defendant meeting at Defendant's house; law enforcement followed Defendant to Thunder Valley Casino and cameras captured his face, confirming he was the fentanyl and methamphetamine source; and the DEA friction ridge examination report confirms it was Defendant who brought the drugs for a co-defendant to sell to the CS because Defendant's fingerprints are on the fentanyl packaging. (*Id.* at 5–6; ECF No. 91 at 2.) Courts have held the weight of the evidence against the person is the least important of all the § 3142(g) factors, but it is still relevant. *Motamedi*, 767 F.2d at 1407. The Court finds the Government proffers substantial evidence against Defendant. Accordingly, these two factors weigh strongly against release.

         *ii.*  *History and Characteristics of Defendant*

Defendant notes that he has strong ties to the United States and Eastern California, his family lives in the area, and his children are U.S. citizens.[2] (ECF No. 86 at 3.) Defendant also submits character letters from his brothers-in-law attesting to his character and a certificate of completion in lift truck operator safety training. (ECF No. 90.) In opposition, the Government argues Defendant's criminal history dates back to 2004, he has been arrested multiple times for carrying a loaded firearm in conjunction with other crimes, and he has sustained at least ten probation violations, failures to appear, or violations of parole. (ECF No. 89 at 6.) The Government further argues Defendant's history of probation and parole violations (namely, "abysmal performance while under court supervision and while incarcerated") show that he will not abide by conditions if released. (*Id.*)

---

[2]  Although Defendant makes these arguments with respect to risk of nonappearance, the Court also construes these arguments as speaking to the history and characteristics of Defendant.

The Court notes the Supplemental Report from Pretrial Services dated February 18, 2025, states that Defendant may pose a danger to the community due to the following factors: "he has a pattern of similar criminal history activity; he has . . . criminal activity while under supervision; he has multiple Probation/Parole violations; he has a criminal history of Violence; he has a prior Firearm felony conviction; according to the assigned government counsel, he has possible gang affiliation; and he has prior arrests for Robbery and Reckless Driving." Among the mitigating factors considered by Pretrial Services include the following: "he is not on probation or parole; he is willing to submit to random drug testing; he has no substance abuse history; he has no mental health history; he is willing to participate in substance abuse treatment; and he is willing to abide by any conditions ordered by the Court."

The Court finds Defendant has a substantive and lengthy criminal history and is especially concerned with Defendant's multiple probation and parole violations and failures to appear. The Court agrees with the Government that Defendant's documented history of noncompliance with the law and conditions of release weigh in favor of his continued detention. (ECF No. 89 at 6.) Accordingly, this factor weighs against release.

### iii. *Danger to the Community if Defendant is Released*

Defendant states in a conclusory fashion in his motion that the government cannot meet the burden of proving by clear and convincing evidence that he poses a danger to the community "because there is no present, quantifiable danger posed by [Defendant's] release."[3] (ECF No. 86 at 4.) Defendant also argues his "broken leg (and cast) is a bar to further criminality." (*Id.*) In opposition, the Government maintains the danger to the community is "tangible," as Defendant has trafficked large quantities of methamphetamine and fentanyl, has Norteño gang ties, and has a lengthy, violent criminal history. (ECF No. 89 at 7.)

As an initial matter, Defendant fails to explain why his broken leg is a bar to criminal behavior. The Court has also reviewed the Pretrial Services report dated January 29, 2025, and

---

[3] The Court notes that the motion specifically states "no present, quantifiable danger posed by Mr. Griffin's release." (ECF No. 86 at 4.) The Court has no knowledge of who Griffin is, nor is Griffin listed as one of the co-defendants in this matter.

5

finds concerning Defendant's long prior arrest history for a wide variety of crimes, some of which are fundamentally dangerous, such as burglary, robbery, and hit and run: property damage. Further, as stated previously, the Supplemental Report from Pretrial Services dated February 18, 2025, provides a long list of persuasive factors regarding why Defendant may pose a danger to the community. The Court finds these factors on balance, when considered with the mitigating factors, weigh against release. Accordingly, this factor weighs against release.

### B. Whether Defendant is a Flight Risk

Defendant argues he has strong ties to the United States and Eastern California as he and his family live in the area, he is a U.S. citizen, and his children are U.S. citizens. (ECF No. 86 at 3.) Defendant further argues he proactively tried to confront a possible criminal case, as he paid money and hired an attorney to contact the U.S. Attorney's Office to arrange a surrender if any case was filed but was arrested within minutes after the DEA returned the attorney's phone calls. (*Id.*) Defendant contends he was arrested soon after he was released from the hospital in a cast for surgery on a broken tibia and Sacramento County Jail is not a clean environment to care for his leg due to restricted access to bathroom facilities. (*Id.*) Defendant notes his leg has begun to emanate an odor, an indication of infection and poor healing. (*Id.*)

In opposition, the Government asserts that although Defendant has ties to Sacramento, he is a flight risk because he cannot be trusted to follow the Court's instructions. (ECF No. 89 at 7.) The Government maintains that while Defendant's broken leg might dissuade or prevent him from physically running from the police, it does not stop him from riding as a passenger, boarding an airplane, or otherwise fleeing or absconding from supervision. (*Id.*) The Government notes Defendant has a documented history of noncompliance under supervision as well as a felony conviction for possession of a controlled substance while in prison. (*Id.*)

In a Supplemental Report from Pretrial Services dated February 18, 2025, Pretrial Services concluded that even though it has concerns about Defendant's alleged conduct in the instant offense, it believes there are conditions that can be fashioned to reasonably mitigate risk of nonappearance — namely, the $100,000 unsecured bond co-signed by Tonja Diongson and several special conditions of release. However, the Court nevertheless finds Defendant's multiple

6

probation and parole violations and failures to appear deeply troubling and indicative of a larger pattern of behavior of evading law enforcement and supervision. Defendant also fails to explain how the Government is incorrect that he could still physically flee from law enforcement despite his broken leg.

Considering the Government's arguments and the § 3142(g) factors, the Court concludes the Government has ultimately shown by clear and convincing evidence that Defendant poses a danger to the community and that no condition or combination of conditions will reasonably assure the safety of the community.

### IV. CONCLUSION

For the foregoing reasons, the Court DENIES Defendant's motion (ECF No. 86) and ORDERS Defendant to remain detained pending trial.

IT IS SO ORDERED.

Date: March 26, 2025

_____
TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE